BRADLEY, Judge.
This is a workmen’s compensation case.
The employer, Montgomery Lincoln-Mercury, Inc., appeals from a judgment awarding compensation to Perry David Neal, administrator of the estate of deceased employee, Cameron M. Neal.
The evidence shows that Cameron M. Neal, deceased, was employed by Montgomery Lincoln-Mercury, Inc. on April 8, 1980 as lease manager. His compensation was based on a salary of $250.00 per week plus commission based upon the gross volume of the company’s lease department.
In the early part of July 1980 the company opened a new branch car lot in Pratt-ville. Neal was temporarily assigned to the Prattville office as manager of the lot. His job consisted of supervising salesmen and overseeing car sales.
On Saturday, July 12, 1980, Neal was to report to work at the Prattville car lot. The weather that day was extremely hot and humid; the temperature at 9:00 a.m. was 88° F., 96° F. at noon, and 99° F. at 3:00 p.m. During the month of July Montgomery had been plagued by a heat wave, which peaked a few days after the date in question.
Neal was forty-five years old, a diabetic and overweight, but otherwise his health was good. Testimony indicates that on the morning of July 12, 1980 Neal followed his normal routine. He ate breakfast with his mother and left for work apparently in good health. K.C. Wright, a salesman assigned to the Prattville lot, arrived at work around 8:00 o’clock that morning. Neal arrived shortly thereafter. Upon his arrival Neal complained to two salesmen that he was not feeling well, and that he was having chills in the air-conditioned office. Neal apparently sat in the office for a while, then went outside to lie down in his car, which was parked in the shade of some trees. Testimony indicates that Neal did not perform any work during this time.
One of the salesmen later went out to the ear and suggested to Neal that he go home. Neal left the lot around 2:00 that afternoon. When Neal arrived at his mother’s house, he complained that he was feeling hot and was too sick to eat. He thereafter went to his air-conditioned room to lie down. The next morning Neal’s mother found him extremely ill, and Neal was taken to the hospital in an ambulance. He died shortly thereafter.
Dr. Lightfoot, the examining physician, first saw Neal on the morning of July 13, 1980. He testified that it was his impression that Neal had suffered a heatstroke. Dr. Lightfoot’s opinion was admittedly based upon the history obtained from members of Neal’s family as to his health and the conditions of his work. Dr. Lightfoot was told that Neal “was selling used cars on an asphalt car lot during a severe heat wave .... He became heat stricken and was sent home from work due to his reaction to the heat.” Dr. Lightfoot could not express an opinion as to whether Neal’s job caused his illness and death.
A claim for workmen’s compensation benefits was brought against Montgomery Lincoln-Mercury, Inc. on October 2, 1980 by Perry David Neal, administrator of Neal’s estate and guardian of Neal’s minor dependent, a daughter. The court heard evidence ore tenus and found that Neal’s death was caused by an accident which arose out of and in the course of his employment. The court further found that:
Decedent, while working at his regular employment during normal working hours, and while on the job, suffered a heat stroke which the Court finds to be an accident within the meaning of the aforesaid Workmen’s Compensation Act.... On the date of the accident, decedent was exposed to conditions of risk or hazard to which he would not have been so exposed had he not been performing his job.
*848 The court found that Neal’s average weekly wage equalled $400.00, and awarded Neal compensation in the amount of $148.00 per week and burial expenses in the amount of $1,000.00.
Montgomery Lincoln-Mercury, Inc. appeals from the award of compensation, alleging that the court erred (1) in finding that Neal’s death was caused by a heatstroke arising out of and in the course of his employment, (2) in finding that Neal’s average weekly wage was $400.00, and (3) in awarding Neal’s estate $1,000.00 in burial expenses.
The standard of review in workmen’s compensation cases is limited to a determination of whether there is any legal evidence to support the trial court’s findings of fact. This court will not weigh the evidence. If any reasonable view of the evidence supports the findings of the trial court, we may then determine if the correct legal conclusions have been drawn therefrom. Newman Brothers, Inc. v. McDowell, 354 So.2d 1138 (Ala.Civ.App.1977), cert. denied, 354 So.2d 1142 (Ala.1978).
In order for an employee to recover benefits under Alabama’s workmen’s compensation laws, his injuries or death must be “caused by an accident arising out of and in the course of his employment.” § 25-5-51, Code 1975. The employer contends that the evidence presented to the trial court does not sufficiently meet the test for causation set out for heat exposure cases so as to render Neal’s death an “accident” within the meaning of the workmen’s compensation statute. The two-pronged test applied to heat exposure cases was first set out in Gulf States Steel Co. v. Christison, 228 Ala. 622, 154 So. 565 (1934):
[T]he harmful condition does arise out of the employment, if, in the performance of the duties for which he was engaged, in the manner required or contemplated by the employer, it is necessary for the employee to expose himself to a danger, materially in excess of that to which people commonly in that locality are exposed, when not situated as he is when thus performing his service, and that such excessive exposure may be found to have been the direct cause of the injury, though operating upon other conditions of common exposure.
That principle has been specifically thus applied to sunstroke or heat prostration or heat exhaustion in many varying conditions. [Citations omitted.]
This standard has been followed in subsequent similar cases, notably Pullman-Standard Car Manufacturing Co. v. Lively, 239 Ala. 684, 196 So. 870 (1940), and Pow v. Southern Construction Co., 235 Ala. 580, 180 So. 288 (1938).
This two-pronged test has been cited as controlling in the more recent cases of City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729 (1975), and Newman Brothers, Inc. v. McDowell, supra. These cases deal with death or injury arising from a heart attack allegedly caused by strain or exertion on the job. In Newman Brothers, this court attempted to clarify its decision in Howard, citing the two-pronged test as set out in Pow v. Southern Construction Co., supra. This court then restated that test:
If in the performance of his job [the employee] has to exert or strain himself or is exposed to conditions of risk or hazard and he would not have strained or exerted himself or been exposed to such conditions had he not been performing his job and the exertion or strain or the exposure to the conditions was, in fact, a contributing cause to his injury or death, the test whether the job caused the injury or death is satisfied.
Appellant contends that this language constitutes a less restrictive standard than that originally set out in Christison. However, we interpret the above language to be a mere clarification of the original Christison test: the legal test of causation does not require proof of some unusual exertion, strain or exposure not ordinary to the job, but the strenuous activity, exposure or other risk must be different from that to which others not employed in the same capacity are exposed.
Reviewing the evidence, we agree with appellant, Montgomery Lincoln-Mer *849 cury, Inc., and find that there is no legal evidence with which to support the finding of the trial court that Neal’s death was caused by an “accident” within the meaning of the statute. As to the first prong of the causation test, the only evidence presented at trial by Neal’s estate consists of testimony concerning the state of Neal’s health prior to his going to work on the Saturday in question and subsequent to his returning home from work in the afternoon, and statements made by a secretary, Ms. Duncan, concerning subsequent discussions of the incident among the other employees. The secretary’s testimony simply relates speculations by the employees as to the possible medical cause of Neal’s death; the statements do nothing to establish that Neal’s death was the result of his performance of job-related duties. In fact, nowhere in the record do we find legal evidence that Neal, once he got to work, performed any activities required of him by his job, or that as a result of his employment he was exposed to the hot and humid weather to any greater degree than any other person in the community. On the contrary, it appears from the testimony of the two car salesmen that Neal was ill when he reached the employer’s premises and that he did not perform work of any kind after his arrival at the car lot. Testimony indicates that Neal sat in an air-conditioned office until he went to lie down in his car, which was parked in the shade of a tree.
The only evidence we can find upon which the trial court could have found Neal’s death to be an accident “arising out of and in the course of his employment” is the testimony of Dr. Lightfoot as to the history he obtained from a member of Neal’s family. Dr. Lightfoot testified that a member of Neal’s family told him that Neal was selling cars on an asphalt parking lot during the heat wave, and that he became ill and was sent home because of his reaction to the heat. The general rule is that statements made to the examining physician by the patient concerning the circumstances under which the injuries were sustained are admissible into evidence over a hearsay objection if the information is necessary to a determination of the nature of the patient’s illness. Newman Brothers, Inc. v. McDowell, supra; Alabama Power Co. v. Edwards, 219 Ala. 162, 121 So. 543 (1929). These statements are, however, admissible only to establish the basis for the physician’s finding as to the condition of the patient, not as evidence as to how the accident occurred. McLaney v. Turner, 267 Ala. 588, 104 So.2d 315 (1958). We are aware that the cases cited concern statements made by the patient himself. In view of the limited admissibility of such statements, and the purpose for which they are offered, we think that statements made by a member of the family under the circumstances of the present case would fall within the ambit of this rule.
With regard to the second prong of the causation standard, the medical test, we find that there is sufficient evidence to support the trial court’s finding that Neal suffered from a heatstroke. The testimony of Dr. Lightfoot concerning statements made to him about the circumstances surrounding Neal’s death is admissible to support the physician’s diagnosis. See Newman Brothers, Inc., supra. The trial court could have found the physician’s diagnosis to be credible based on that evidence.
However, in light of our finding as to the legal test of causation, we cannot say that Neal’s death was caused by an accident arising out of and in the course of his employment. The judgment of the trial court is reversed and the cause remanded for entry of judgment consistent with this opinion.
In view of our decision that Neal’s estate is not entitled to recover workmen’s compensation benefits under these circumstances, there is no need for us to enter into a discussion of appellant’s other allegations of error.
REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., concurs.
HOLMES, J., dissents.