This is a workmen's compensation case. The trial court awarded workmen's compensation benefits. On appeal, the Court of Civil Appeals, 423 So.2d 846, reversed on the ground that the evidence was insufficient to support the trial court's findings that death was caused by an accident within the meaning of the workmen's compensation statute.
Cameron M. Neal, Jr., was employed by Montgomery Lincoln-Mercury, Inc. on April 8, 1980, as a lease manager. His earnings were based on a salary of $250.00 per week plus commission based upon the gross volume of the company's lease department. On Saturday, July 12, Neal, diabetic and obese, went to work about 7:00 A.M., and according to his mother, he had eaten breakfast and was feeling fine. During the month of July, the City of Montgomery had been plagued by a long lingering heat wave. Temperatures that Saturday varied from 88°F at 8:00 A.M., to 99°F around 3:00 P.M., with a maximum of 100°F. The humidity was high. There was no wind. Employment records revealed that the deceased was working on July 12, and that his responsibilities were on the car lot of Montgomery Lincoln-Mercury.
Co-employees testified that Neal was already at work when they got there and that they did not know what Neal did that day while outside the air-conditioned office. Another co-employee, Ms. Duncan, overheard conversations between salesmen alluding to the fact that Neal had suffered a heat stroke and that it was a possible cause of his death.
Neal's mother's testimony at trial was as follows:
 "A. He came in that Saturday afternoon, it must have been around two-thirty. I mean I didn't look at the clock, but I think it was around between two thirty and three. He said, I am exhausted, I am so hot, and I said can I fix you something, and he said I'm too sick and went to bed.
 Q. Yes. I believe he stated to you when he came home that he had gotten too hot?
A. That's right.
Q. And that he was exhausted?
A. That's right.
Q. And that he had been at work?
A. That's right."
Neal's mother and sister both testified that Neal's bedroom was air-conditioned and cool. The next morning, July 13, his mother found Neal unconscious, very ill and suffering from high fever, and diarrhea. Neal was taken to the hospital in an ambulance. Upon arrival in the emergency room, Neal was in a coma with a body temperature of 108°F. He died shortly thereafter. The examining physician, Dr. Lightfoot, found the diagnosis to be compatible with heat stroke, which was indicated on the hospital records and his death certificate. Dr. Lightfoot testified that Neal, at age forty-five, obese and diabetic, was a high risk and that the weather conditions were inducive to heat stroke. *Page 852 
On November 10, 1980, Dr. Lightfoot wrote a letter to the workmen's compensation insurance carrier for Montgomery Lincoln-Mercury, in which he stated that the deceased "was selling used cars on an asphalt car lot during a severe heat wave. . . . He became heat stricken and was sent home from work due to his reaction to the heat." All testimony, hospital records and letter were introduced into evidence without objection.
The standard of review in workmen's compensation cases is limited to a determination of whether there is any legal evidence to support the trial court's findings of fact. The appellate court does not weigh the evidence. If any reasonable view of the evidence supports the findings of the trial court, it is then determined if the correct legal conclusions have been drawn therefrom. Newman Brothers, Inc. v. McDowell,354 So.2d 1138 (Ala.Civ.App. 1978), cert. denied 354 So.2d 1142
(Ala. 1978).
In order for an employee to recover under the workmen's compensation statute, the injury or death must be "caused by anaccident arising out of and in the course of his employment."
(Emphasis added.) Section 25-5-51, Code 1975.
The Court of Civil Appeals found "no legal evidence with which to support the finding of the trial court that Neal's death was caused by an `accident' within the meaning of the statute," and that in fact, the only evidence upon which the trial court could have based its decision was the testimony by Dr. Lightfoot that a family member informed him that prior to his illness, Neal "had been selling cars on an asphalt parking lot during the heat wave."
As a general rule, statements made to a physician by his patient to establish the basis for the physician's diagnosis, are admissible only in support of his findings, and not as evidence as to how the accident occurred.
In Newman, supra, where an employee had struggled with a tarpaulin and subsequently suffered a heart attack, the court held that the doctor's statements as to what the employee had told him were properly admitted, over an objection by the employer. The court further stated that even if there had been error in the admission of the physician's statements, it would not require reversal. Statements by a patient who claimed that her abortion was due to a streetcar ride were properly admitted in Alabama Power Co. v. Edwards, 219 Ala. 162, 121 So. 543
(1929). McLaney v. Turner, 267 Ala. 588, 104 So.2d 315 (1958), held that testimony by the physician who had been told by his patient at what time the patient had left home, was admissible.
Montgomery Lincoln-Mercury contends that none of the evidence admitted by the trial court was legal, and that even if the evidence were legal, it would not satisfy the medical causation test. We disagree.
We find that the medical causation test was met. The physician's testimony and the hospital records indicate that Neal suffered a cerebrovascular accident and diabetic ketoacidosis precipitated by the severe heat exhaustion.
All pertinent evidence was admitted without objection. While the court in Newman, Alabama Power Co. and McLaney overrule hearsay objections and admitted the evidence for a limited purpose, in the case at bar, no objections were made. This Court held in Gurganus v. Kiker, 286 Ala. 442, 241 So.2d 113
(1970), that inadmissible evidence, admitted without objection, should be given the same weight as if it had been admissible, even when such evidence is inadmissible hearsay. Also,Hackmeyer v. Hackmeyer, 268 Ala. 329, 106 So.2d 245 (1958), held that any taint because of hearsay is waived and forever lost if the complaining party fails to object at trial.
The trial court is not in error if inadmissible testimony comes in without objection and without a ruling thereon appearing in the record. The testimony is thus generally admissible and not limited as to weight or purpose. State v.Kennedy, 52 Ala. App. 470, 294 So.2d 439 (1974).
Furthermore, this is a workmen's compensation case and the standard of review *Page 853 
dictates that we must construe the facts favorably to the employee in this case, where the evidence allows such construction. Reynolds Metals Company v. Gray, 278 Ala. 309,178 So.2d 87 (1965). In other words, if there is any legal evidence on any reasonable view, or reasonable inference therefrom, the trial court's determination will not be disturbed. W.T. Smith Lumber Co. v. Raines, 271 Ala. 671,127 So.2d 619 (1961).
In the final analysis, this case presents a matter raised on appeal which was not raised at the trial level. Formal objections are a condition precedent to an appeal based on the improper reception of evidence. C. Gamble, McElroy's AlabamaEvidence, § 426.01 (1) (3d ed. 1977).
We hold that Neal's death was caused by an "accident" within the meaning of the workmen's compensation statute. Neal obviously suffered a heat stroke while at work. The physician testified that he was a high risk and that the heat stroke precipitated his death.
The judgment of the Court of Civil Appeals is reversed and the case remanded to it to reinstate the judgment of the trial court.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and JONES, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
MADDOX, J., dissents.
BEATTY, J., not sitting.