This is a workmen's compensation case.
The trial judge awarded workmen's compensation benefits to the employee after making the following findings of fact:
 "[T]he Plaintiff, Clovis H. Chandler, was an employee of the Defendant . . . prior to September 2, 1982, the Plaintiff contracted an occupational disease arising out of and in the course of his employment with the Defendant, as defined by Code of Alabama 1975, Section 25-5-110, et seq., as last amended; that said occupational disease was not in and of itself disabling until, to-wit, September 2, 1982, when the Plaintiff was engaged in strenuous exercise of handling fire wood within the line and scope of his employment for the Defendant, and at said time, the Plaintiff suffered injury by accident in that a valve or other part of his circulatory system was caused to leak; and that the Plaintiff instantly became totally disabled, . . . to earn a livelihood within the meaning of the Workmen's Compensation Act since said date of injury . . . . the combination of occupational disease . . . and the injury also sustained by Plaintiff on September 2, 1982, has caused the Plaintiff to be permanently and totally disabled, . . . that said occupational disease and injury arose out of and in the course of his employment with the Defendant;. . . ."
The employer, through able counsel who has favored this court with an excellent brief, appeals. We affirm.
The dispositive issue on appeal is whether the trial judge's finding that the employee is totally and permanently disabled
because of the combination of an occupational lung disease and a heart injury is supported by the evidence. *Page 830 
We note that the standard of review by this court is as follows:
 "[T]he standard of review in a workmen's compensation case is very narrow. . . . On appeal, review of a workmen's compensation case is limited to questions of law, and to examination of the evidence to determine if there is any legal evidence to support the findings of the trial court."
Dodson v. Atrax Division of Wallace-Murray Corporation,437 So.2d 1294, 1296 (Ala.Civ.App. 1983).
We first consider whether there is any evidence to support a conclusion that the employee suffered an "occupational disease."
The employee began working for the employer in September 1972. First, he worked as an assembler of steeraxles for approximately eight and one-half years; next, he washed machinery parts for a short time; then, he worked as a "deburry,"[1] grinding brackets "[o]ff and on for two, two and a half years." He testified that the grinding was a very dusty condition, that he had never seen such dust before in any plant he had worked in, and, furthermore, by the end of the working day, it was difficult to tell whether he was a "black man" or a "white man" because of the dust on his face and clothes.
In September 1979, or approximately one and one-half years after beginning to work as a deburry, the employee began spitting up blood. He was hospitalized for this in November 1979 for a short time. He testified that he went back to work as a deburry, grinding painted cast iron about eight hours "most everyday."
The employee continued to work as a deburry until September 2, 1982. On this date, while handling firewood for the employer in hot weather with a temperature between 90 and 100 degrees, the employee had shortness of breath, weakness, chest pains, and heart palpitations. The employee saw the company doctor again but was referred to several specialists, including a pulmonary specialist, a thoracic surgeon, and two cardiologists.
Each of these doctors testified by deposition regarding their medical findings concerning the employee's lungs and heart.
The testimony of the pulmonary specialist indicates the following: The pulmonary specialist examined X-rays of the employee's lungs that were taken in November 1979 and February 1983. The pulmonary specialist stated that the X-rays did not show evidence of pneumoconiosis, an occupational, inhalation lung disease; however, the pulmonary specialist stated that the employee had a "tremendous pulmonary impairment based on hisbullous disease in his right upper lobe." (Emphasis added.) He was uncertain as to what caused the bullous condition.
The testimony of the thoracic surgeon indicates the following: The thoracic surgeon determined that there were cystic lesions, nodulation, and scarring in the employee's right lung. He specifically testified that this lung disorder was a process contributed to by the excessive dust on the employee's job; furthermore, the thoracic surgeon specifically stated that cigarette smoking by the employee did not cause such scarring, rather "these fibrotic infiltrates would go with lung exposure to some foreign body of some type." (Emphasis added.) He also testified that "[a]nyone with lungs like this would be better not to be exposed to dust."
The statutory definition of "occupational disease" is as follows:
 "(1) OCCUPATIONAL DISEASE. A disease arising out of and in the course of employment, . . . which is due to hazards in excess of those ordinarily incident to employment in general and is peculiar to the occupation in which the employee is engaged but without regard to negligence or fault, if any, of the employer. A disease (including, but not limited to, loss of hearing due to noise) shall be deemed an occupational disease only if caused by a hazard recognized as peculiar *Page 831 
to a particular trade, process, occupation or employment as a direct result of exposure over a period of time to the normal working conditions of such trade, process, occupation or employment. . . .
 "(2) CONTRACTION OF AN OCCUPATIONAL DISEASE. Such term shall include any aggravation of such disease without regard to the employment in which the disease was contracted."
Ala. Code (1975), § 25-5-110.
The facts as detailed above indicate that there is evidence to support a conclusion that the employee suffered a "disease arising out of and in the course of employment" and that the disease is "due to hazards in excess of those ordinarily incident to employment in general," "peculiar to the occupation," and the "result of exposure over a period of time." This is proper analysis as indicated in an earlier case interpreting the statutory definition of "occupational disease":
 "[T]here [should] be evidence that plaintiff has a disease which may be directly caused by or result from exposure over a period of time to a hazard recognized as peculiar to the normal working conditions of his particular occupation. There must be further evidence that plaintiff's disease was in fact contracted from the nature of his employment or was aggravated thereby, and that the contraction or aggravation arose out of and in the course of his employment. It then must be shown that the disability claimed resulted from the disease."
City of Tuscaloosa v. Howard, 55 Ala. App. 701, 318 So.2d 729,734 (Civ.App. 1975) (emphasis added).
First, we note that the facts indicate that there is a "disease arising out of and in the course of employment."
(Emphasis added.) The thoracic surgeon's testimony, that the excessive dust on the employee's job contributed to the scarring, cystic lesions, and nodulation in the employee's lung, is the evidence that establishes that there is a "disease arising out of and in the course of employment." Specifically, the fact that the excessive dust contributed to the employee's lung disorder is an aggravation as stated in subsection 2 of the statute. See Ala. Code (1975), § 25-5-110. Put another way, "contributed to" is an "aggravation" in the statutory definition of "occupational disease." See Dodson v. AtraxDivision of Wallace-Murray Corp., 437 So.2d 1294, 1297
(Ala.Civ.App. 1983).
Second, we note that the facts indicate that the disease is "due to hazards in excess of those ordinarily incident to employment in general," "peculiar to the occupation," and the "result of exposure over a period of time." (Emphasis added.) The employee testified that he had never seen such dusty working conditions in a plant before; moreover, although not
previously indicated, testimony of other plant employees indicates that other parts of the employer's plant did not have this grinder's dust. Furthermore, the grinder's dust wasapparently peculiar to the job of a deburry. Finally, the testimony indicates that the employee worked as a deburry for about two and one-half years before becoming too sick to do his job.
We, therefore, conclude that there is evidence to establish that the employee suffers from an occupational lung disease as defined in the Alabama Workmen's Compensation Act.
Regarding the trial court's finding that the employee suffered a heart injury within the line and scope of his employment, and that the employee is totally and permanently disabled as a result of the combination of the lung disorder and the heart disorder, we must, as previously indicated, determine whether there is any evidence to sustain this finding, i.e., the existence of a "heart injury."
The facts pertinent to this injury are as follows: As previously indicated, each medical doctor testified by deposition regarding their findings concerning the employee's lungs and heart. The testimony of the cardiologist from Birmingham, Alabama, indicates that the employee has an abnormal heart rate called premature ventricular contraction and a back microvalve leaking moderately. He testified that *Page 832 
"[t]he minor valve leak would probably not affect his limitations without the lung disease, but when you put the twotogether, that was plenty to explain shortness of breath,fatigue and funny heart beats with exercise." (Emphasis added.)
This cardiologist also testified that the leak was in the valve between the lungs and the heart and that the leaking increases with exercise. He concluded that the majority of the employee's impairment or disability was a lung problem, or "seventy percent lungs and thirty percent valve"; moreover, although the employee was not a heart attack candidate, "if his heart was as bad as his lungs, he probably wouldn't be alive."
Furthermore, this cardiologist testified as follows regarding the employee's disability:
 "I doubt seriously if this man could do physical labor.
". . . .
 ". . . I don't think that man could do physical labor with a shovel or a pick or a hoe or anything for eight hours, whether he's a supervisor in a plant, whether he's putting something on an assembly line. . . . I think he is unequivocally limited as compared to his peers, and that limitation is approximately forty or fifty percent."
Before determining whether there is "any evidence" to establish that the employee suffered a heart injury within the line and scope of his employment and that the employee is totally and permanently disabled as a result of the combination of the lung disorder and the heart disorder, it would appear appropriate to note the following from our Workmen's Compensation Act.
The Workmen's Compensation Act requires that an employee's injury emanate from "an accident arising out of and in the course of his employment. . . ." See Ala. Code (1975), §25-5-51. Put another way, we must determine whether the employee suffered a heart injury because of "an accident arising out of and in the course of his employment."
In order to determine causation in this instance, we apply a legal causation test and a medical causation test as set forth in our earlier opinion, City of Tuscaloosa v. Howard,55 Ala. App. 701, 318 So.2d 729, 732 (Civ.App. 1975).
The legal causation test as set forth in Howard is the following:
 "It appears that the proper test was set out in Pow v. Southern Construction Co., [235 Ala. 580, 180 So. 288 (1938)] . . . which we paraphrase as follows: If in the performance of the duties for which he is employed an employee is exposed to a danger or risk materially in excess of that to which people not so employed are exposed, and an injury occurs, such injury may legally be determined to have arisen from his employment and be an accident under the statute."
Howard, 318 So.2d at 732. Put another way, whether there is any evidence that the employee was exposed to a danger or risk, unlike other people not employed as a deburry, is the legal causation test.
In this case, as previously indicated, the employee's heart injury, or valve leakage, occurred while the employee was handling firewood for the employer in hot weather with a temperature between 90 and 100 degrees. This may indeed be considered a danger or risk in excess of that to which people not so employed are exposed to. Cf. Ex parte Neal,423 So.2d 850 (Ala. 1982). This is especially true in view of the fact that we must construe facts in favor of the employee in a workmen's compensation case, if the evidence allows such a construction. Neal, 423 So.2d at 853. See also City of MuscleShoals v. Davis, 406 So.2d 919, 922 (Ala.Civ.App. 1981). We, therefore, conclude that the legal causation test is met in this case.
The medical causation test as set forth in Howard is the following: "[S]uch exposure, though operating with or upon other exposure common to all, was in fact, the contributing cause of the injury." *Page 833 Howard, 318 So.2d 732. Put another way, whether there is any
evidence, that the employee's handling firewood in very hot weather was the contributing cause of the employee's heart injury, is the medical causation test.
As a general rule, an employer takes his employee subject to his physical condition when he enters his employment. Allen v.Metro Contract Services, Inc., 421 So.2d 1289 (Ala.Civ.App. 1982).
In this case, there was medical testimony that the employee had an abnormal heart rate and a leaking heart valve. As stated earlier, the cardiologist that examined the employee determined that the leakage increased with exercise and when coupled with his lung condition there was reason for his shortness of breath, fatigue, and irregular heartbeats with exercise.
If a condition is aggravated by an accident in the course of employment, the condition is compensable even though the accident may not have caused an injury in a normal person. Mitchell MotorCo. v. Burrow, 37 Ala. App. 222, 66 So.2d 198 (Ct.App. 1953).
In Neal, a case analogous to the present case, the Supreme Court of Alabama determined that the medical causation test was satisfied. This was because a doctor's testimony and medical records indicated that the employee's accident in Neal was precipitated by severe heat exhaustion; furthermore, thisdiagnosis was based on the fact that family members informed the physician that prior to the employee's illness, the employee "`had been selling cars on an asphalt parking lot during the heat wave.'" Neal, 423 So.2d at 852.
Here, there appears to be some evidence that the heart condition was aggravated due to exercise. When coupled with the existing lung condition, the exercise of lifting wood in hot weather could have been the contributing cause of the injury. In view of the above, we conclude that there is some evidence to support a conclusion that the medical causation test has been met. See Neal, 423 So.2d at 852.
There is, as indicated, evidence to support a conclusion that the employee is permanently and totally disabled. There was, as mentioned above, testimony that the employee cannot perform physical labor. The evidence indicates that the only work ever performed by the employee was physical labor. In fact, there was testimony that the employee cannot do anything on a sustained basis. We further note that the employee has only a ninth grade education.
The above evidence, contrary to the employer's contention, indicates that the employee could not be retrained for gainful employment. This is especially true in view of our earlier decision, Thompson and Company Contractors v. Cole,391 So.2d 1042, 1046 (Ala.Civ.App. 1980), in which we held the following:
 "Although the trial court did not specifically find that Cole could not be retrained for gainful employment, we hold that implicit in its conclusion that Cole was permanently and totally disabled is the finding that he could not be so retrained. This finding of fact, as with all other findings of fact made by the trial court, must, however, be supported by some evidence. . . ."
It would appear appropriate to conclude this already lengthy opinion with the following: "The employee's lack of education and vocational training coupled with the medical testimony is clearly sufficient evidence to support the trial court's judgment regarding the employee's loss of ability to earn."Tidwell Industries, Inc. v. Kennedy, 410 So.2d 109, 111
(Ala.Civ.App. 1982); and "total disability within the Workmen's Compensation Act does not mean absolute helplessness or entire physical disability, but means inability to perform the work of one's trade or inability to obtain reasonably gainfulemployment." Vulcraft, Inc. v. Wilbanks, 54 Ala. App. 393, 396,309 So.2d 105, 106 (Civ.App. 1975). (Emphasis added.) *Page 834 
This case is due to be and is affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.
[1] One who removes the burrs (rough edges) from a piece of machined work.