180 So. 288
**POW v. SOUTHERN CONST. CO., Inc.**

**6 Div. 191.**

Supreme Court of Alabama.

Jan. 20, 1938.

Rehearing Denied April 21, 1938.

Harsh, Harsh & Hare and N. S. Hare, all of Birmingham, for appellant.

London & Yancey and Fred G. Koenig, Sr., all of Birmingham, for appellee.

BOULDIN, Justice.

Certiorari to review a workman's compensation case.

There is no bill of exceptions. Hence, there is no question of lack of legal evidence to support the finding of facts by the trial judge. The issue here is purely one of law, namely: Was the conclusion of law correct on finding and conclusion of facts?

The finding of facts, pertinent to this review, found in third paragraph of the court's decree, and his conclusion of law thereon, appear in full in the report of the case.

Stress is laid on the express finding that at the time and place, and while engaged in the duties required by his employment, the deceased "became exposed to the wetting and chill of the water accumulated in said excavations, and became wet to the knees and chilled therefrom, and that the exposure and chill which he suffered was greatly and materially in excess of that to which other people not similarly employed in said locality were exposed and were required to be exposed; * * * and the court further finds as a fact that the death of said A. S. Pow was the proximate result of bronchial pneumonia or bronchitis, contracted by said A. S. Pow on the occasion of his exposure consequent upon the necessity of his getting into the excavations or ditches in or about his duties as certifying engineer on the 5th day of August, 1936, and under the circumstances and conditions hereinabove recited."

We are thus brought to the direct question: Is death from pneumonia under these conditions death resulting from accident in the course of employment under our Workmen's Compensation Law, Code 1923, § 7534 et seq., as amended? Admittedly the case is important to employer and employee, in the administration of such law, according to its spirit and intent.

Appellant earnestly argues the case is governed in principle by our own former decisions.

Notable among these is Gulf States Steel Co. v. Christison, 228 Ala. 622, 154 So. 565, 569.

That was a case of heat exhaustion resulting from exposure to excess heat and humidity in the room where the employee worked, the heat being accentuated by the machines at which he worked.

For a full study of the import of that decision, further disclosed by the line of authorities therein cited, we quote the following:

"If the heat exhaustion arose out of the employment, as well as in its course, we think it is clear that any harmful effect upon the physical structure of the body of the employee, which was a proximate result of it, is an accident under our statute. Section 7596 (i), Code; Gulf States Creosoting Co. v. Walker, 224 Ala. 104, 139 So. 261; New River Coal Co. v. Files, 215 Ala. 64, 109 So. 360; 1 Honnold on Workmen's Compensation, p. 281, § 86.

"In connection with the sort of accident here involved, the principle to which most authorities give assent is that the harmful condition does arise out of the employment, if, in the performance of the duties

for which he was engaged, in the manner required or contemplated by the employer, it is necessary for the employee to expose himself to a danger, materially in excess of that to which people commonly in that locality are exposed, when not situated as he is when thus performing his service, and that such excessive exposure may be found to have been the direct cause of the injury, though operating upon other conditions of common exposure. American Fuel & Clay Products Co. v. Gilbert, 221 Ala. 44, 127 So. 540; Cudahy Packing Co. v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L. Ed. 366, 30 A.L.R. 532.

"That principle has been specifically thus applied to sunstroke or heat prostration or heat exhaustion in many varying conditions. The authorities in the main adopt and apply it substantially as we have thus stated. It would serve no good purpose to refer to the discussions and various applications of the principle. Many cases are analyzed in texts and notes as follows: 1 Schneider's Workmen's Compensation Law, 2d Ed. pp. 701 to 710; 1 Honnold's Workmen's Compensation, p. 428; 13 A.L.R. 979; 53 A.L.R. 1085; 46 A.L.R. 1218; 25 A.L.R. 147; 16 A.L.R. 1038, 1039."

In the Files Case, cited in the foregoing, the alleged injury was suffocation from breathing carbon dioxide or carbon monoxide, or both.

It was said: "Whether his suffocation resulted from breathing such air for several hours, or the inflowing air from the other room for a few minutes, the event 'happened suddenly and violently,' as contradistinguished from occupational disease."

And again: "A disease 'results proximately from the accident' if the disease is induced by lowered resistance proximately caused by the accident, or if it is aggravated or accelerated by the accident so that the disabling injury results proximately from the accident—would not have developed but for the accident."

In the Cudahy Case, also cited above, the Supreme Court of the United States, while dealing with different facts, stressed the principle that there was no want of causal relation between the employment and injury from hazards common to all, "if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree."

And again quoted with approval the following from George Anderson & Co. v. Adamson, 50 Scot.L.R. 855: "If it is the normal risk merely which causes the accident, the answer must be that the accident did not arise out of the employment. But if the position which the workman must necessarily occupy in connection with his work results in excessive exposure to the common risk (cf. Ismay's Case [1908] A.C. 437 [77 L.J.P.C.N.S. 107, 99 L.T.N. S. 595, 24 Times L.R. 881, 52 Sol.Jo. 713]; Rodger's Case [1912] S.C. 584 [49 Scot. L.R. 413, 5 B.W.C.C. 547]), or if the continuity or exceptional amount of exposure aggravates the common risk (cf. M'Neice's Case [1911] S.C. 12 [48 Scot.L.R. 15, 4 B.W.C.C. 351]; Warner's Case [1912] A. C. 35 [81 L.J.K.B.N.S. 45, 105 L.T.N.S. 676, 28 Times L.R. 58, 56 So.Jo. 70, 5 B. W.C.C. 177, 49 Scot.L.R. 681]), then it is open to conclude that the accident did not arise out of the common risk, but out of the employment."

Again in Honnold, p. 428, § 119, also cited in the Christison Case, above, it is said under the heading "Injury from Forces of Nature": "But where the work and the method of doing the work exposes the employe to the forces of nature to a greater extent than he would be if not so engaged, the industry increases the danger from such forces, and the employer is liable."

Without pursuing the review, it is clear enough that this court in the Christison Case followed the line of cases, English and American, holding injury or death resulting from an exposure to the forces of nature, peculiar to the nature, time, and place of the the employment, is an accidental injury arising out of and in the course of employment. The spirit and purpose of Compensation Laws, as often disclosed, is that industry shall bear part of the burden of disability and death, resulting from the hazards of industry.

We can discern no difference in principle between injury resulting from exposure to excess heat and humidity, and exposure to cold and water. If the chill and shock is found to so disturb the bodily structure, as to result in pneumonia and death, there can be no distinction in principle between this and pneumonia brought on by external wounds.

Long lists of cases appear in the books where pneumonia has developed from injury arising from many forms of acci-

dents. Beside the notes and texts cited in the Christison Case, supra, we cite notes in 73 A.L.R. 539 et seq.; 20 A.L.R. 66 et al. Several cases reviewed in these notes were pneumonia cases resulting from special exposure to chill from the elements by reason of the employment.

The English cases took the lead on this line, but they have been followed by leading American courts whose compensation laws are to like effect as ours.

Thus, in Jones v. Philadelphia Coal & Iron Co., 285 Pa. 317, 132 A. 122, 123, a pneumonia case, with symptoms the same as in the instant case, the Pennsylvania Supreme Court said: "Injury following an extraordinary exposure to wet and cold, suffered in the course of employment, may be compensable under the workmen's compensation statutes (Pa.St.1920, § 21916 et seq. [77 P.S.Pa. § 1 et seq.]), on the same principle as a prostration resulting from the heat. Lane v. Horn & Hardart Baking Co., 261 Pa. 329, 104 A. 615, 13 A.L.R. 963. So may death from pneumonia caused by an injury or unusual exertion and exposure." See, also, Industrial Commission of Ohio v. Roth, 98 Ohio St. 34, 120 N.E. 172, 6 A.L.R. 1463, quoted in arguendo in Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530; Hocke v. Emdee Management Corporation, 245 App. Div. 882, 282 N.Y.S. 324; De La Pena v. Jackson Stone Co., 103 Conn. 93, 130 A. 89; Texas Employers' Ins. Ass'n v. Jimenez, Tex.Civ.App., 267 S.W. 752; In re McPhee, 222 Mass. 1, 109 N.E. 633.

■ Our statute in terms looks to compensation for disease or death resulting proximately from an accident. Great Atlantic & Pacific Tea Co. v. Davis, 226 Ala. 626, 148 So. 309; Republic Iron & Steel Co. v. Reed, 223 Ala. 617, 137 So. 673.

We would find no difficulty in holding the instant case within our Workmen's Compensation Law, in view of the construction given it in our own decisions, but for decisions of the Supreme Court of Minnesota, much stressed in argument for appellee, and probably leading the trial court to his conclusion of law on the finding of in this case.

■ As often observed, our law having been taken from the Minnesota law in the respects here involved, the construction given it by the Minnesota court at the time of its adoption here in 1919 is presumed also to have been adopted. Ex parte W. T. Smith Lumber Co., 206 Ala. 485, 90 So. 807.

In the case of State ex rel. Faribault Woolen Mills Company v. District Court, 138 Minn. 210, 164 N.W. 810, 811, L.R.A. 1918F, 855, the court dealt with a case of typhoid fever resulting from infected drinking water furnished at the employer's factory for the use of its employees. The court stressed the restrictive definition of personal injury caused by accident, and, after reviewing authorities, concludes with this: "The disease in the present case was not caused by an accident as that term is defined in the law. The disease germs were not taken into the system in consequence of anything which happened 'suddenly and violently,' or which at the time produced 'injury to the physical structure of the body.'"

In the later case of Costly v. City of Eveleth, 173 Minn. 564, 218 N.W. 126, decided in 1928, the same rule was applied to a case of pneumonia contracted under quite similar conditions to those in the instant case.

Said the court: "Pneumonia, like typhoid, is a germ disease." After reviewing the typhoid case, supra, it was said:

"We are unable to distinguish the pneumonia present in this case from the typhoid fever for which compensation was sought in the Faribault Woolen Mills Co. Case.

"The legislative definition of accident is admittedly difficult of application in such cases, but that difficulty does not permit us to ignore it or deny it effect. It is hard to see how it can have any function, or how we can give such obviously restrictive words their usual restrictive effect, unless we exclude from compensability such germ diseases as typhoid and pneumonia where there is no proof of a sudden and unforeseen event, as a cause, producing at the time injury to the physical structure of the body."

■ Although a germ disease, the trial court found in the instant case that pneumonia was caused by the chill and wet from exposure peculiar to the time and place of employment.

Certainly we would not say, in view of common experience, that no legal evidence would support the finding of the court in this case. We are concluded by the finding of facts in this case, not the findings of the Minnesota court. We are not dis-

posed to depart from the construction already given our statute by this court to follow the Minnesota court in pneumonia cases. How could it be said that the shock from chilly air and cold water as contrasted with August temperatures on the outside were such as to cause pneumonia, but no injury to the physical structure of the body? To so declare would in effect mean that such injury is limited to external traumatic injuries. This would be wholly illogical, and at variance with our former views hereinbefore fully discussed.

It results that the trial judge has made a misapplication of the law to the facts as found by him.

Certiorari is granted vacating the judgment. The cause is remanded for further proceedings in keeping with this decision.

Reversed and remanded.

All the Justices concur.