196 So. 870
**PULLMAN–STANDARD CAR MFG. CO. v.
LIVELY.**

**6 Div. 666.**

Supreme Court of Alabama.
June 6, 1940.

Rehearing Denied June 27, 1940.

Huey & Welch, of Bessemer, and Cabaniss & Johnston and Paul Johnston, all of Birmingham, for appellant.

Frank D. Hollifield and William L. Clark, both of Birmingham, for appellee.

BOULDIN, Justice.

Was the death of the employee, Benjamin F. Lively, Jr., "caused by an accident arising out of and in the course of his employment" within the meaning of the Workmen's Compensation Law, Code, §§ 7544, 7596, (i), (j) ?

The trial court, in his finding of facts, sets forth in detail and with clarity the circumstances upon which he found this issue in the affirmative.

The controlling facts, so found, are these:

"On July 6, 1939, said Lively, Jr. was employed by the respondent to perform manual work in operating a press in the plant of respondent; and said Lively, Jr. did on the morning of July 6, 1939, perform manual work for the respondent in and about the operation of said press, in performance of his employment by the respondent. The physical exertion suffered by said Lively as a consequence of doing said work, caused a large amount of heat to be generated in his body, which heat in turn caused profuse perspiration by the said Lively, Jr., the loss of chlorides from his blood, the concentration of his blood, and an onset of heat exhaustion, which in turn caused the left side of his heart to fail, and his death to ensue, about 7 P. M. on July 6, 1939.

"The weather at the time when and during the time when said Lively, Jr. was doing said work was extremely hot, July 6, 1939 was an extremely hot day. The combination of temperature and humidity on July 6, 1939 was such as to make the weather extremely and oppressively hot to human beings.

* * *

"On the night of July 5, 1939, said Lively, Jr., while at his home and away from his place of employment by the respondent, consumed a considerable quantity of intoxicating beverages. Said Lively, Jr. began working on his job with the respondent at about 7 A. M., July 6, 1939. At the time he began working for the respondent on the morning of July 6, 1939, and at all times during the time he was working for the respondent on July 6, 1939, he was sober, and he was not intoxicated. The court finds that the death of said Lively, Jr., was not due to intoxication within the meaning of Sec. 7544 of the 1923 Code.

"As a consequence of the ingestion of intoxicating beverages by said Lively, Jr., on the night of July 5, 1939, his body was in a measurably weakened condition, that is, his body was measurably weakened in its ability to resist heat exhaustion on July 6,

686

1939. The said weakened condition was a substantial factor—as a predisposing circumstance—in bringing about the attack of heat exhaustion which caused his death.

"Summarizing: There were three substantial factors in bringing about the death of said Lively, Jr., namely, (1) A weakened condition in his body caused by his ingestion of intoxicating beverages on the night of July 5, 1939, and (2) Unusually hot weather, and (3) Heat generated within his body from physical exertion in doing his work for the respondent. If any one of said factors had been absent, said Lively, Jr. would not have received the attack of heat exhaustion. In particular, the court finds that said Lively, Jr. would not have received the attack of heat exhaustion which caused his death, if he had not undergone the physical exertion which he underwent in doing his work for the respondent, with the consequent generation of heat in his body from such exertion. As performing the work which said Lively, Jr. was employed to perform by the respondent, was a substantial and proximate factor in causing the attack of heat exhaustion, the court finds and decides that the death of said Lively, Jr. was caused by an accident arising out of and in the course of his employment by the respondent, and that petitioner is entitled to recover compensation of the respondent. .

"In view of the finding made above that heat generated in the body of said Lively, Jr., from physical exertion in doing the work which he was employed to do by respondent, was a substantial factor in bringing about the attack of heat exhaustion and his death, the court regards as immaterial and unnecessary to a proper decision in this cause, the matter of whether the place where said Lively, Jr. worked was hotter than the average place of work or abode in the community. But in view of the fact that respondent regards a finding upon that point as material, and for whatever legal bearing a finding upon the point may be properly thought by the Supreme Court (in case an appeal should be taken) to have upon the rights of the parties, the court will make a finding upon the point. The court finds that the place where said Lively, Jr. worked during the morning of July 6, 1939, that is to say, the place where he did his work in and around the Press, was in the shade, was in a well-ventilated building, was free from artificial heat, was a cooler place than a place in the sun would have been, and was not hotter than the average place of work or abode in the community generally."

The trial court, on the hearing, rendered an opinion, which was elaborated at length on application for rehearing. These opinions which have been carefully considered, aid this court in discerning the viewpoint of the writer touching the construction of our statute, the interpretation of our decisions, and the decisions of other courts.

This viewpoint is quite accurately expressed in the following paragraph of the opinion of the trial court: "If a bookkeeper, performing no duty which would generate any substantial amount of heat within his body, but on the contrary was pursuing the ordinary duties of such an employment, in an office which was no hotter than the average place of work or abode in the community, should be stricken with a heat stroke on a hot day, the accident would not be compensable for the reason that his death would be attributable solely to the natural heat in the community, a force of nature alone. On the other hand, where the performance of the manual labor which an employee is employed to perform causes an onset of heat exhaustion, there is a direct, and immediate causal connection between the doing of the work, and the ensuing accident. In such a case as the latter, the work has caused the accident. Even though the place of one's work were cooler than the average place of work or abode in the community, the court thinks that if heat generated in the body from physical exertion in doing the work brought on heat exhaustion, such heat exhaustion would be an accident arising out of the employment for the reason that it is a direct immediate product of performing the work. Heat exhaustion is a hazard of the performance of manual labor, especially in hot weather, and hence is a hazard of the industry."

The last sentence of the above excerpt discloses the logic of the holding.

Under the premises stated, death would have ensued if the employee had been engaged in manual labor for himself on this hot day at a time and place where he was exposed to no unusual or excess heat other than the state of the weather. There is no finding of unusual strain or overexertion attending the work he was engaged in. A finding on this point was deemed immaterial. Petitioner, out of abundant caution, presents a bill of exceptions tending

to show the work engaged in was comparatively light, involved no overexertion or unusual strain. It is not necessary to look to the bill of exceptions for that the finding of facts discloses no such condition as an element in the case.

The logic of the holding of the trial court is, that, if the injury resulted from heat exhaustion "in the course of the employment," and would not have occurred but for his employment at manual labor on a hot day, "it arose out of the employment."

Such is not the terms of the statute, nor the construction given it by this court.

■ In Gulf States Steel Co. v. Christison, 228 Ala. 622, 154 So. 565, 569, a case of heat exhaustion, the law was thus stated: "The harmful condition does arise out of the employment, if, in the performance of the duties for which he was engaged, in the manner required or contemplated by the employer, it is necessary for the employee to expose himself to a danger, materially in excess of that to which people commonly in that locality are exposed, when not situated as he is when thus performing his service, and that such excessive exposure may be found to have been the direct cause of the injury, though operating upon other conditions of common exposure."

In Pow v. Southern Const. Co., Inc., 235 Ala. 580, 180 So. 288, 291, a case of abnormal and excessive exposure of the employee to cold and damp due to the time, place and nature of his employment, the Christison case was quoted and followed: "There was no want of causal relation between the employment and injury from hazards common to all, 'if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree.' * * * 'If it is the normal risk merely which causes the accident, the answer must be that the accident did not arise out of the employment. But if the position which the workman must necessarily occupy in connection with his work results in excessive exposure to the common risk * * * then it is open to conclude that the accident did not arise out of the common risk, but out of the employment.' "

■ These cases and the authorities there cited are deemed a sufficient statement of the law applicable to the instant case. Whatever be the views of other courts, this court has followed the line of cases holding that where death ensues from heat exhaustion, it does not arise out of the employment merely because it resulted from manual labor not involving unusual strain or overexertion, in his employment. The employment must expose the employee to a risk in excess of that to which other manual laborers are exposed because of hot weather.

The certiorari will be granted; the judgment of the court below reversed and vacated, and the cause remanded.

Reversed and remanded.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.