YATES, Judge.
Karen Maclin (Maclin) filed a complaint for workmen’s compensation benefits in the Circuit Court of Madison County, Alabama, against Bamsi, Incorporated (Bamsi), because of an alleged work-related injury. Ma-elin claims that on January 31, 1991, while employed by Bamsi and in the course of her employment, she developed nerve damage as a result of exposure to cold temperatures, which resulted in reflex sympathetic dystrophy (RSD) to her right hand. Maclin received temporary total disability benefits from May 13, 1991, until trial on May 14, 1992. Following an ore tenus proceeding, the trial court denied her claim for benefits and Maclin appeals.
We note initially that the standard of review in workmen’s compensation cases is a two-step process. This court must first look to see if there is any legal evidence to support the finding of the trial court. If such evidence is found, we then must determine whether any reasonable view of that evidence supports the trial court’s judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991).
The trial court entered an order stating that the medical evidence does not establish a causal connection between Maclin’s alleged RSD and her alleged exposure to cold temperatures. The trial court found that Maclin did not suffer an accident or injury that arose out of and in the course of her employment.
The issue presented for this court’s review is whether the trial court erred in finding that Maclin failed to present evidence that her exposure to cold temperatures was the medical cause of her condition.
“For an injury to be compensable, the employee must establish both legal and medical causation. Once legal causation has been established, i.e., that an accident arose out of, and in the course of employ *2 ment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought.”
Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala.Civ.App.1989) (citation omitted).
The record revealed the following background facts: on January 31, 1991, Ma-clin, along with three other employees, were conducting fuel inventory from 7:30 to 9:30 A.M. in approximately 30 degree weather. She was wearing latex gloves on each hand. Maclin testified she experienced a cold and tingling sensation in her right hand, and when she took off her glove at about 9:00 A.M. she noticed her right hand was swollen and purple. After returning to the main office, she reported the swelling and was sent to the supervisor, Allen Hall, who allowed her to go to Job Health, a company that provided medical care for Bamsi personnel.
At Job Health, Maclin saw Dr. Larry Sullivan, an emergency room physician, who testified by deposition that, from May 1990 through October 1990, he treated Maclin for a shoulder injury. He testified that, in regard to her shoulder injury, Maclin’s symptoms and complaints seemed to be exaggerated.
Dr. Sullivan’s examination of Maclin on January 31, 1991, revealed slight swelling to the distal fingers on her right hand; however, he found no evidence of frostbite and noted there were no obvious abnormalities. Dr. Sullivan diagnosed Maclin’s condition to be “overexposure to the cold” and he recommended she exercise her hand. After a second examination of Maclin, Dr. Sullivan testified that he found no swelling, no weakness, no redness, and no abnormalities.
Dr. Philip Arthur Maddox, a specialist in orthopaedic and hand surgery, testified in his deposition that in August 1987, he operated on Maclin to correct stenosing tenosynovitis to the first dorsal extension compartment in her left wrist. In August 1988, he performed surgery on her right wrist to alleviate inflammation caused by deQuervain’s disease.
On February 14, 1991, Maddox examined Maclin regarding her current condition. Although he found her right hand to be cool, she had full range of motion and no abnormal swelling or discoloration. After two subsequent examinations, he testified that her symptoms did not fit any traditional diagnosis and he did not find any physical characteristics customarily present with RSD. Based on her complaints of pain, numbness and tingling, Dr. Maddox believed she had neurodystrophy.
Dr. George Morgan, a neurologist, treated Maclin from February 27, 1991, to March 6, 1991. He testified by deposition that he diagnosed Maclin with mild RSD. He testified that the characteristics of RSD consist of an area that is very cold or very hot; mild swelling; and pain that is instant and is often out of proportion to the presumed injury. The characteristics of RSD that he observed in Maclin were that her right hand was palpably colder than her left, and that Maclin complained of pain.
Dr. Morgan referred Maclin to Dr. Kenneth Willis, an anesthesiologist and specialist in chronic pain management, who treated Maclin from April 1991 to April 1992. He testified at trial that he observed swelling and discoloration in Maclin’s right hand and diagnosed her condition as RSD, at a Stage I level caused by a right ulnar or median neuralgia secondary due to exposure to cold temperatures. Treatment consisted of stel-late ganglion blocks or nerve blocks which decreased the swelling and pain and increased the range of motion. In his opinion, Maclin could return to gainful employment as long as limitations are provided along with physical therapy, nerve blocks and oral medication. Dr. Willis testified that he believed to a reasonable degree of medical certainty that Maclin’s condition was caused by her exposure to cold.
Dr. E.G. Norwood III, a neurologist, testified in his deposition that he examined Ma-clin in November of 1991, some ten months following her exposure to cold temperatures. He testified that Maclin was referred to him by Royal Insurance Company to determine if she was suffering from RSD or if her current condition was related to previous traumas that were unrelated to her current claim. He testified that he found normal color, blood flow and temperature in her right hand, and that the characteristics of RSD were severe pain, disuse or limited use of a limb, shiny skin, loss of hair growth, and changes in sweating patterns. Although Maclin reported pain, none of the skin changes were pres *3 ent according to Dr. Norwood. He stated that with RSD, there are hard objective findings that must be present to make the diagnosis, and that none were present when he conducted his examination. From a neurological standpoint, he found no explanation for her pain.
Six doctors with different specialties examined Maclin. Five testified in this case. Three testified that they found no physical evidence of RSD, while two doctors diagnosed her condition as RSD.
The trial court determined that the medical evidence refuted Maclin’s claim that she suffered from RSD as a proximate consequence of being subjected to cold temperatures for two to three hours on January 31, 1991. The trial court considered, in addition to the testimony of Drs. Sullivan, Maddox, and Norwood, Maclin’s own testimony and that of her co-workers.
Our review of the record reveals that there was legal evidence to support the trial court’s finding that Maclin failed to establish a work related injury. A reasonable view of such evidence supports the trial court’s judgment. Eastwood Foods, supra. Accordingly, the judgment of the trial court is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.