680 So.2d 253 (1995)
TRINITY INDUSTRIES, INC.
v.
Vallie CUNNINGHAM.
AV93000742.
Court of Civil Appeals of Alabama.
August 25, 1995.
Rehearing Denied October 13, 1995.
*254 Charles F. Carr, Rhonda Pitts Chambers and Donald B. Kirkpatrick II of Rives & Peterson, Birmingham, for Appellant.
Robert W. Lee, Jr. of Lee & Sullivan, P.C., Birmingham, for Appellee.
John J. Coleman III and Suzanne Alldredge of Balch & Bingham, Birmingham, for Amicus Curiae Business Council of Alabama in support of Trinity Industries.
ROBERTSON, Presiding Judge.
Vallie J. Cunningham filed a complaint in the Jefferson County Circuit Court against his employer, Trinity Industries, Inc., seeking workers' compensation benefits. Cunningham alleged that on September 2, 1992, he had suffered a stroke which arose out of and in the course of his employment with Trinity, and that as a result of the stroke he had suffered a permanent partial disability or a permanent total disability.
Following an ore tenus proceeding and submission of briefs by both parties, the trial court entered a judgment finding that Cunningham had proven both legal and medical causation, that he had suffered a 100% loss of earning capacity as the result of a workrelated stroke, and that he was permanently and totally disabled. The trial court awarded benefits accordingly.
On appeal, Trinity does not dispute that Cunningham is totally and permanently disabled, but raises the following two issues: (1) Whether Cunningham presented substantial evidence that the stroke he suffered was causally related to his employment at Trinity, and (2) Whether the trial court erred in allowing Cunningham to introduce his own deposition as substantive evidence after he had testified.
*255 We first note that this case comes under the new Workers' Compensation Act (new Act). This court first addressed the new Act's standard of review in Whitsett v. BAMSI, Inc., 652 So.2d 287 (Ala.Civ.App. 1994), wherein we adopted the following standard: We will view the facts in the light most favorable to the findings of the trial court. The trial court's judgment will not be reversed unless it is clear that the trial court's findings are manifestly contrary to the evidence as contained in the record as a whole or unless it is clear that fair-minded persons in the exercise of impartial judgment would adopt a contrary conclusion. Id.
Trinity argues that Cunningham failed to prove both legal and medical causation, a two-prong test developed by this court after its creation in 1969.
In 1919, the legislature enacted the Alabama Workmen's Compensation Act (old Act) to become effective January 1, 1920, with appellate review by certiorari to the Alabama Supreme Court. In 1969, the legislature created the Court of Civil Appeals and jurisdiction of "all appeals in workmen's compensation cases" was transferred from the Alabama Supreme Court to this court; the legislature also provided that the decisions of the Alabama Supreme Court would govern the holdings and decisions of this court. 1969 Ala.Acts, No. 987. The old Act required that there be an accident[1] arising out of and in the course of employment, causing injury or death, for compensation to be awarded.

FIRST LEGAL CAUSATION TEST
Early Alabama Supreme Court cases developed the "excessive exposure" test in order to establish that there had been an "accident" within the intent of the old Act. The first case to refer to that principle was American Fuel & Clay Prods. Co. v. Gilbert, 221 Ala. 44, 127 So. 540 (1930), wherein the employee was struck and killed by lightning. In that case, our Supreme Court, quoting from Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366 (1923), stated that if the position which the workman must occupy results in "excessive exposure" to the common risk, then it could be concluded that the accident arose out of the employment.
The "excessive exposure" test was actually developed in Gulf States Steel Co. v. Christison, 228 Ala. 622, 154 So. 565 (1934), wherein the employee suffered from heat exhaustion. In Christison, our Supreme Court held that "if, in the performance of the duties for which he was engaged, ... it is necessary for the employee to expose himself to a danger, materially in excess of that to which people commonly in that locality are exposed, ... such excessive exposure may be found to have been the direct cause of the injury...." Christison, 228 Ala. at 628, 154 So. at 569.
Later, in Pow v. Southern Constr. Co., 235 Ala. 580, 180 So. 288 (1938), the trial court found from the evidence that, in performing his duties, Pow had to get down into ditches, footings, foundations, and excavations wherein there was standing water; that he became wet and chilled therefrom; that the exposure and chill were greatly and materially in excess of that to which other people not similarly employed in said locality were exposed; that by reason of said exposure Pow contracted a severe cold and congested condition which was later diagnosed as bronchial pneumonia or bronchitis; and that the pneumonia or bronchitis caused Pow's death. The trial court, however, held that Pow's exposure and death were not caused by an accident within the meaning of the old Act and that Pow's dependent was not entitled, therefore, to receive compensation. Our Supreme Court, relying on its earlier decisions, held that "injury or death resulting from an exposure to the forces of nature, peculiar to the nature, time, and place of the employment, is an accidental injury arising out of and in the course of employment." Pow, 235 Ala. at 584, 180 So. at 291. In reversing the trial court's judgment, the Court held that if it was necessary for the employee to expose himself to a danger materially in excess of that to which other people were exposed, *256 such exposure could be found to have been the cause of the injury. Id.
Then in Southern Cotton Oil Co. v. Wynn, 266 Ala. 327, 96 So.2d 159 (1957), our Supreme Court addressed the necessity of proving "excessive exposure" in a stroke case. In Wynn, the trial court found that Wynn had suffered a stroke and that the cause of the stroke was the muscular strain and exertion employed by Wynn in the ordinary shoveling of steam coal. On certiorari review, one contention before the court was:
"(b) That `even if the physical exertion engaged in by the employee contributed to a condition which brought about the hemorrhage, it was not an accident and not compensable within the purview of the Workmen's Compensation Act because the employee was engaged in the ordinary and regular performance of his duties; there was no overexertion and no extra hazardous circumstance which contributed to the injury.'"
Wynn, 266 Ala. at 329, 96 So.2d at 160.
The petitioner, Southern Cotton Oil Co., contended that even though Wynn's injury was caused by the exertion of shoveling coal, the trial court could not conclude that the injury arose out of his employment without also finding that Wynn was subjected to unusual strain or overexertion or extra hazardous circumstances in the performance of his work. The petitioner relied on Pullman-Standard Car Mfg. Co. v. Lively, 239 Ala. 684, 196 So. 870 (1940) (heat exhaustion); Pow' and Christison, supra. In affirming the trial court's judgment, our Supreme Court stated: "The rule which can be drawn from these cases is that when an injury to an employee results from exposure the injury cannot be regarded as arising out of his employment unless he is subjected to unusual risk and excessive exposure because of the nature of his work." Wynn, 266 Ala. at 332, 96 So.2d at 163. The Court further stated: "It seems clear that this court has limited application of the foregoing rule to injuries resulting from exposure." Id. (emphasis added). Our Supreme Court held that "a finding by the trial court that the plaintiff had been subjected to unusual strain or overexertion was not necessary to support a conclusion that the injury was caused by an accident arising out of his employment." Wynn, 266 Ala. at 333, 96 So.2d at 163-64.
After the Court of Civil Appeals was created in 1969, the first case to apply the "excessive exposure" test was City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729 (Ala. Civ.App.1975), a heart attack case. In Howard, this court discussed Christison, Pow, and Wynn, in finding that "our courts [have come] to the conclusion that if the job caused the injury it was an accident under the intent of the Act.... We have arrived at the point of determining if the job caused the injury or death." Howard, 55 Ala.App. at 705, 318 So.2d at 732. This court then, in reliance on Larson's treatise, 1A A. Larson, Workmen's Compensation Law, § 38.83, held that causation has two distinct "parts," legal and medical. This court defined legal causation by paraphrasing the "excessive exposure test" as set out in Pow, supra, as follows:
"If in the performance of the duties for which he is employed an employee is exposed to a danger or risk materially in excess of that to which people not so employed are exposed, and an injury occurs, such injury may legally be determined to have arisen from his employment and be an accident under the statute. Such can be the legal test of causation."
Howard, 55 Ala.App. at 705, 318 So.2d at 732. This court then held that Howard, a fireman, had failed to show legal causation, i.e., "[t]here was no evidence of strenuous activity, exposure to danger or risk different from others not employed as firemen." Howard, 55 Ala.App. at 706, 318 So.2d at 733.
In Newman Bros., Inc. v. McDowell, 354 So.2d 1138 (Ala.Civ.App.1978), another heart attack case, this court restated legal causation to be:
"If in the performance of his job he has to exert or strain himself or is exposed to conditions of risk or hazard and he would not have strained or exerted himself or been exposed to such conditions had he not been performing his job and the exertion or strain or the exposure to the conditions was, in fact, a contributing cause to his *257 injury or death, the test whether the job caused the injury or death is satisfied."
354 So.2d at 1140.
In Kane v. South Central Bell Tel. Co., 368 So.2d 3 (Ala.1979), our Supreme Court acknowledged that our courts had come to the conclusion that if the job caused the injury it was an accident under the intent of the old Act. The sole issue was whether the absorption of paint fumes over a two-day period constituted an accident; the Supreme Court applied the "excessive exposure" legal causation test and held that Kane's injuries were accidental within the meaning of the old Act.
In Fordham v. Southern Phenix Textiles, Inc., 387 So.2d 204 (Ala.Civ.App.1980), a stroke case, the trial court found that the employee was not exposed to a danger or risk materially in excess of that to which people not so employed were exposed and denied benefits. In affirming the trial court's judgment, this court again stated that there were two distinct tests which must be met to establish causation, legal and medical; and it held that "[b]oth of these tests must be satisfied before the employment can be said to have caused the injury." Fordham, 387 So.2d at 205. "To establish legal causation the employee must show that in the performance of her duties she was exposed to a danger or risk materially in excess of that to which people not so employed are exposed." Id. This holding, based on Howard and Newman Brothers, was contrary to our Supreme Court's opinion in Wynn, which was also a stroke case.
In Ragland Brick Co. v. Campbell, 409 So.2d 443 (Ala.Civ.App.1982), this court extended the requirement of proving "excessive exposure" causation to a leg and back injury, citing Howard. Then in County of Mobile v. Benson, 521 So.2d 992, 995 (Ala.Civ.App. 1988), citing Campbell and Fordham, this court again held that to recover for a back injury, the employee must show that in the performance of his duties he was exposed to a danger or risk materially in excess of that to which people not so employed are exposed, i.e., legal causation.
In Canterbury Elect. Co. v. Price, 555 So.2d 1059 (Ala.Civ.App.1988), another back injury case, this court, citing Benson and Campbell, held that the employee must establish the "excessive exposure" causation and the medical causation before being entitled to workmen's compensation. This court also held that "[m]edical causation must be established through medical testimony, i.e., the testimony of doctors." Price, 555 So.2d at 1060. In reversing this court, our Supreme Court held that medical causation may be established without medical testimony. Ex parte Price, 555 So.2d 1060 (Ala.1989). The "excessive exposure" causation issue was not before the Supreme Court in that case. As previously stated, however, our Supreme Court had already held in Wynn, that the "excessive exposure" causation was required only in cases involving injuries caused by exposure, e.g., pneumonia and heat exhaustion. Wynn has never been overruled by our Supreme Court.

SECOND LEGAL CAUSATION TEST
In Jefferson County v. Cunningham, 521 So.2d 37 (Ala.Civ.App.1987), a neck injury case, this court stated: "The employer apparently does not dispute that legal causation has been established, i.e., that the accident which allegedly caused the employee's present injury or condition occurred in the course of his employment." Cunningham, 521 So.2d at 38. Then in Hammons v. Roses Stores, Inc., 547 So.2d 883 (Ala.Civ.App. 1989), a back injury case, this court stated that legal causation could be established by showing that an accident arose out of and in the course of employment.
In Ex parte Harris, 590 So.2d 285 (Ala. 1991), our Supreme Court held that since the job caused the injury, the injury was an "accident" within the intent of the old Act. Harris had testified that her injury had arisen out of and in the course of her employment, however, there was no evidence that she was exposed to a danger or risk materially in excess of that to which other people not so employed were exposed. Under this new definition of "accident," i.e., "not a characterization of the method of injury, but the result thereof," it is apparent that the accident arose out of and in the course of Harris's employment. Harris, 590 So.2d at 287 (emphasis in original). While the Court did not *258 discuss legal causation, it is clear that Harris established legal causation as defined in Cunningham and Hammons.
Later in Ex parte Moncrief, 627 So.2d 385, 388 (Ala.1993), a back injury case, our Supreme Court cited Hammons, in holding that: "Once legal causation has been established, i.e., once it has been established that an accident arose out of and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought. Hammons. "This definition of legal causation was also used in Maclin v. Bamsi, Inc., 644 So.2d 1 (Ala.Civ.App.1993), a case involving an injury to the right hand.
Clearly, this court and our Supreme Court have established two different legal causation tests: first, that there was an excessive exposure, i.e., an exposure to a risk or danger materially in excess of that to which people not so employed are exposed, Kane; Wynn; Pow; Christison; Gilbert; Campbell; Fordham; Newman Bros.; Howard, supra; and second, that an accident arose out of and in the course of employment. Moncrief; Harris; Maclin; Hammons; and Cunningham, supra.
Nowhere in the old Act or the new Act is there a requirement that a claimant prove that there was an exposure to a danger or risk materially in excess of that to which other people not so employed were exposed. As previously stated, the old Act required that there be an "accident" in order for compensation to be awarded. This, of course, created a problem of proof for certain injuries and deaths, such as the injury by heat exhaustion in Christison and the death by pneumonia in Pow. Thus, the "excessive exposure" test was used to show that there had been an "accident" within the meaning of the Workmen's Compensation Act. This court, however, in Howard, and Newman Bros., defined this "excessive exposure" as "legal causation." Fordham, supra. This court began to apply the first legal causation test, "excessive exposure," to injuries and deaths other than those caused by exposure; this was contrary to our Supreme Court's holding in Wynn.
If we continue to apply the rule of law regarding "excessive exposure" legal causation as set out in Howard, Newman Bros., Fordham, and their progeny, in ordinary, non-exposure cases, it appears that even if a claimant proves by a preponderance of the evidence that the job caused the injury, there could be no recovery unless the claimant also proves that the employee was exposed to a danger or risk materially in excess of that to which other people not so employed are exposed, i.e., the "first legal causation test." Put another way, in addition to proving that the job caused the injury, the claimant would also have to prove "that [the employee] was exposed to a danger or risk in excess of that to which people not so employed are exposed." Wiggins v. ARC, Inc., 599 So.2d 1204, 1205 (Ala.Civ.App.1992). Most people employed in ordinary jobs would be unable to meet this burden or proof.
We find, therefore, that the definition of legal causation as stated in Moncrief, is now controlling for injuries other than those caused by "excessive exposure," i.e., if a claimant establishes that an accident arose out of and in the course of employment, legal causation has been established. § 12-3-16. We also find that Christison, Pow, Wynn, and Kane, are still controlling in cases where the injury or death is caused by excessive exposure, i.e., heat exhaustion, pneumonia, and paint fumes absorption.
Thus, we have two legal causation tests in establishing an accident under the intent of the new Act, one for "excessive exposure" cases and one for ordinary cases. Moncrief; Kane; Wynn; Pow; Christison; Maclin; Hammons; and Cunningham, supra.
The legislature, in enacting the new Act in 1992, provided that for certain injuries, such as the injury in Harris, to be compensable, the claimant must prove that those injuries arose out of and in the course of employment. § 25-5-81(c). The requirement to prove an accident was eliminated. Clearly, the legislature recognized that a person can have a compensable injury without having an accident if the injury arose out of and in the course of the employment. This, in effect, combined legal causation and medical causation *259 into one causation for those particular injuries.
We first hold that, except for those injuries and deaths resulting from excessive exposure, a claimant is not required to establish that there was an exposure to a danger or risk materially in excess of that to which people not so employed are exposed. Moncrief; Harris; and Wynn, supra. If a claimant establishes that an accident arose out of and in the course of employment, legal causation is established. Id. Once legal causation is established, a claimant must establish that the accident caused the injury for which recovery is sought. Moncrief, supra. Whether a claimant has satisfied this test must be determined on a case-by-case basis. Ex parte Price, supra.
We further hold that if a claimant establishes by the necessary evidence that the job caused, or contributed to, the injury or death, then the claimant has established causation, both legal and medical. Harris, supra; Ex parte Lewis, 469 So.2d 599 (Ala. 1985); Kane, supra; Wynn, supra.
We must now determine if the trial court's findings in this case are supported by substantial evidence. § 25-5-81(e)(2).
The record reflects that on September 2, 1992, in the course of his employment at Trinity, Cunningham suffered a stroke after having worked a punch-press machine from 7:00 a.m. to 11:30 a.m. with only one 15-minute break. Cunningham, then 48 years old, had efficiently operated a punch-press machine at Trinity for two to three years before this injury occurred.
Dr. Gordon Kirschberg, a neurologist, testified that he saw Cunningham only once, at which time he took a history from Cunningham and performed a physical examination. Dr. Kirschberg testified that the type of stroke that Cunningham had suffered was called an infarction, which is caused by a lack of blood circulation to the brain; and that in an infarction, a blood vessel to the brain becomes blocked, preventing the brain from getting the appropriate amount of oxygen and glucose. Dr. Kirschberg also testified that he did not know what had caused the blockage to occur in Cunningham's case, but that the most common conditions contributing to a stroke are hypertension and atherosclerotic disease, although there are many other factors that may predispose someone to having a stroke. Dr. Kirschberg further testified that no one really knows what role physical activity plays in producing or initiating a stroke; however, he testified that exercise and physical activity do elevate a person's blood pressure, and that an elevated blood pressure can cause a stroke or have some influence on the possibility of a person having a stroke.
Furthermore, Dr. Kirschberg testified that he had reviewed "Plaintiff's Exhibit One," his recorded observations of Cunningham's physical capacity evaluation; "Plaintiff's Exhibit Two," the records of Dr. Eslami, a neurologist; and "Plaintiff's Exhibit Three," the records from Bessemer Carraway Hospital where Cunningham was treated at the emergency room on the day he suffered the stroke. Dr. Kirschberg testified that those records revealed that Cunningham had suffered some type of "vascular accident"; that Cunningham did not discover that he had high blood pressure until after he was admitted into the hospital; and that it was most likely that hypertension was the underlying cause of Cunningham's stroke because a Doppler scan revealed that Cunningham's arteries did not have a great amount of atherosclerotic disease.
Dr. Kirschberg testified that if a person has "chronically hypertensive vessels and you give one last push to the blood pressure it may cause some spasm or little clots to fall off and that may, in fact, be the cause of the stroke." Additionally, on cross-examination, Dr. Kirschberg testified that in Cunningham's case, the physical exertion of the job could have elevated his blood pressure much more than "the normal well-compensated, normaltensive individual." He also testified that although there was no real way to determine with any reasonable degree of medical certainty whether or not any physical activity contributed to cause Cunningham's stroke, he believed that physical activity which elevated blood pressure could have been a contributing cause to Cunningham's stroke.
*260 It is not necessary that the employment be the sole cause of a stroke, or dominant cause, so long as the employment is a contributing cause of a stroke. Ex parte Valdez, 636 So.2d 401 (Ala.1994).
Cunningham testified that on the day he had the stroke, he operated a punch-press machine for about four and one-half hours, and that during that period he constantly lifted, punched, removed, and put new material onto the machine before he took a break. Cunningham testified that he went to the restroom, that while he was in the restroom, he realized that something was wrong; and that the last thing he remembers was going outside to tell one of his co-workers how he was feeling.
Greg Pate, a fabrication supervisor with Trinity, testified that he was familiar with Cunningham; that Cunningham had operated a punch-press machine at Trinity for two to three years; and that the punch-press machine Cunningham operated was dedicated to small car parts, with each part weighing on average between 10 to 15 pounds and measuring approximately two feet in length. Pate testified that Cunningham was a good employee and that he ran the punch-press machine with regularity. Pate also testified that Cunningham's job involved picking up the parts and placing them in a material tray beside the machine and then picking up the parts again and placing them in the machine, i.e., Cunningham would pick up a part, put it in the machine, operate the machine, take the part off the machine and set the part aside. Pate testified that Cunningham would do two to three parts per minute. Pate further testified that on the day Cunningham suffered the stroke, Cunningham began working at 7:00 a.m., that he worked continuously until 9:30 a.m. when he took a 15-minute break, and that Cunningham then worked until 11:30 a.m., when he suffered the stroke. Pate testified that if Cunningham left the work-floor at 11:30 a.m., an unscheduled break time, then he had to have been ill because Cunningham was "not a person who would walk away from his machine."
Trinity introduced the deposition testimony of Dr. Nasrollah Eslami, a neurologist, to rebut the testimony of Dr. Kirschberg. Dr. Eslami testified that he first saw Cunningham on September 2, 1992, when Cunningham came to the Bessemer Carraway Hospital to be treated for a sudden onset of double vision and right-sided numbness and weakness. Dr. Eslami testified that on that date, he advised Cunningham to stop smoking and to take aspirin. The next time Dr. Eslami saw Cunningham was on September 16, 1992. On that day, Dr. Eslami performed an MRI test on Cunningham which revealed that Cunningham had had a stroke in the left frontal lobe, left thalamus. Dr. Eslami testified that he again advised Cunningham to stop smoking. Dr. Eslami further testified that some of the major risk factors associated with causing a stroke are high blood pressure, cholesterol, smoking, and diabetes. Dr. Eslami testified that based upon his treatment of Cunningham, he did not believe that Cunningham's work was a contributing factor in causing him to have a stroke. In Dr. Eslami's opinion, no work-related activity could have caused the type of stroke that Cunningham had suffered.
Dr. Eslami testified on cross-examination that reasonable physicians could disagree as to whether severe exertion had precipitated Cunningham's stroke. However, he also testified that severe exertion could precipitate or increase the onset of a stroke "to the slightest degree indirectly, if it causes any disfunction of the heart or hemodynamics of the brain," but that the possibility of severe exertion causing a stroke was remote.
Medical causation may be established by lay testimony or by lay testimony coupled with medical testimony. Ex parte Price, supra. The trial court is not bound by expert testimony. Malone v. ConAgra Poultry, Inc., 595 So.2d 897 (Ala.Civ.App.1992). The trial court, as the finder of facts, is authorized to draw any reasonable inference from the evidence, including conclusions of medical facts that are not within the peculiar knowledge of medical experts. Ex parte Price, supra; Winn-Dixie, Inc., of Montgomery v. Ates, 628 So.2d 791 (Ala.Civ.App. 1993).
In its order, the trial court stated that "[w]here the medical testimony ... is conflicting, reasonable doubts are to be resolved *261 in favor of the employee due to the beneficent policy of the Workers' Compensation Act. National Restaurant Corp. v. Blevins, 611 So.2d 1096 (Ala.Civ.App.1992)." The trial court found that before Cunningham suffered the stroke, he had been "repetitively lifting 15-pound pieces of metal and punching them in the punch-press for approximately four and one-half hours," and that "this activity satisfie[d] legal causation because it constitutes exposure to a risk `materially in excess of that to which people not so employed are exposed,' which Mr. Cunningham would not have been performing had he not been at work. Newman Bros., 354 So.2d at 1140." The trial court also found that Cunningham's "undiagnosed hypertension [did] not disqualify his compensation claim because it [did] not prevent him from working in a normal manner prior to the stroke" and because "the stroke became symptomatic during work, immediately following repetitive lifting." The trial court also found that Cunningham had proved causation, i.e., that the stroke had arisen out of and in the course of his employment. Although the trial court found that Cunningham had proved "excessive exposure" legal causation, Cunningham needed only to establish that the accident arose out of and in the course of his employment. Moncrief, supra.
"It is well settled that work[ers'] compensation is not limited to those in perfect health. If the employment aggravated, accelerated, or combined with a latent disease or infirmity to produce disability, the preexisting disability does not disqualify the claim under the `arising out of employment' requirement of the statute." Lewis, 469 So.2d at 601 (quoting Wynn, 266 Ala. at 333, 96 So.2d at 164). See also Kelley v. G.UB.MK Constructors, etc., 636 So.2d 454 (Ala.Civ. App.1994); City of Fort Payne v. Barton, 621 So.2d 993 (Ala.Civ.App.1993).
After viewing the facts in the light most favorable to the findings of the trial court, we cannot hold that the trial court's findings are manifestly contrary to the evidence as contained in the record as a whole or that it is clear that fair-minded persons in the exercise of impartial judgment would adopt a contrary conclusion. Consequently, we hold that the trial court's findings are supported by substantial evidence.
The second issue raised by Trinity is whether the trial court erred in allowing Cunningham, after he had testified, to introduce his own deposition as substantive evidence.
At the hearing, Cunningham's attorney offered Cunningham's deposition testimony into evidence at the conclusion of the direct examination of Cunningham. Cunningham's attorney stated to the trial court that the deposition was being offered because at the time it was taken, Cunningham had a better recollection of some of his activities and he wanted those recollections to be a part of the record.
The trial court allowed Cunningham's deposition testimony to be admitted into evidence with the caveat that it would be used only to explain or to expound upon matters brought out at the hearing and that any matters in the deposition testimony which conflicted with testimony elicited at the hearing would be disregarded.
The trial court's findings in a workers' compensation case will not be disturbed on appeal even if illegal evidence was admitted, as long as there is other legal evidence which supports those findings. Wilson v. American Cast Iron Pipe Co., 528 So.2d 338 (Ala.Civ.App.1988). "If there is legal evidence to support the trial court's findings in a work[ers'] compensation case, the reviewing court will consider issues regarding the trial court's rulings on the admissibility of evidence at trial only if the amount of illegal evidence which was admitted suggests the probability that the trial court's findings were influenced thereby." M & H Valve Co. v. Carmichael, 607 So.2d 224, 227 (Ala.Civ. App.1991).
In this case, the trial court heard direct testimony from Cunningham, Cunningham's supervisor, and medical experts. This testimonial evidence supports the trial court's findings independent of the facts contained in Cunningham's deposition. Furthermore, the trial court stated that Cunningham's deposition testimony would be used only to explain *262 or to expound upon matters brought out at the hearing. Accordingly, the trial court's admission of Cunningham's deposition does not warrant a reversal of its judgment. Rule 45, Ala.R.App.P.; Wilson, supra.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
YATES and MONROE, JJ., concur.
CRAWLEY, J., concurs specially.
THIGPEN, J., concurs in the result.
CRAWLEY, Judge, concurring specially.
I agree with the majority's analysis of the "excessive exposure" and causation issues. This is a very close case. I think the worker presented a bare minimum of evidence, just enough to meet the preponderance standard. The same quantum of evidence clearly would not have entitled the worker to relief under the standard set out in § 25-5-81(c).
Section 25-5-81(c) of the new Worker's Compensation Act includes the following provision:
"[I]njuries which have resulted from gradual deterioration or cumulative physical stress disorders, ... shall be deemed compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the employee's employment."
The brief of the Amicus Curiae argues that § 25-5-81(c) applies in this case because cardiovascular disease resulting in a stroke represents a "gradual deterioration." Both medical experts agreed that "a stroke is a disease process that occurs over somewhat of an extensive period of time." One of the physicians testified:
"[A] stroke ... doesn't happen as a result of one factor in a short period of time. It's a disease process that goes on ... a disease process that is slowly progressive in causing changes in the vessel walls.... [G]enerally the factors have been there for a long period of time. So let's say the man has high blood pressure, which is a chronic condition, has been smoking for 20 years, and didn't take care of his diet, cholesterol was high, or has diabetes; the conditions were there, and the disaster happens all of a sudden."
The amicus contends that the worker's injury is not compensable because he did not present clear and convincing evidence that his stroke arose out of and in the course of his employment. Although that argument is persuasive, the parties did not raise it in the trial court or on appeal.
NOTES
[1] "Accident" was defined as "an unexpected or unforeseen event, happening suddenly and violently with or without human fault, and producing at the time injury to the physical structure of the body by accidental means." New River Coal Co. v. Files, 215 Ala. 64, 65, 109 So. 360 (1926).