Ala. Code 1975, § 25-5-31, provides for compensation to be awarded for personal injury or death "caused to an employee by an accident arising out of and in the course of his employment." The key question in this case was whether the employee's stroke arose out of the course of his employment.
Since 1975, the test in Alabama for determining whether a worker's job caused certain health conditions has been a two-fold determination based on both a legal test and a medical causation test. City of Tuscaloosa v. Howard, 55 Ala. App. 701,318 So.2d 729 (Ala.Civ.App. 1975). This two-part test has been used most frequently in regard to heart attack claims, but it has also been used in other cases where there was the strong possibility that the injury to the employee had occurred because of pre-existing latent health problems and was not truly work-related. Hellums v. Hager, 360 So.2d 721
(Ala.Civ.App. 1978).
The Court of Civil Appeals opinion in this case explicitly overruled Howard. See Ex parte Trinity Industries, Inc.,680 So.2d 253 (Ala.Civ.App. 1995). While I must commend the majority of this Court for attempting to uphold Howard, its opinion has the same practical effect as overruling Howard.
This problem requires me to dissent.
Several aspects of the majority opinion cause this problem. One of these aspects is the following statement regarding the facts: "Before the stroke, Cunningham had never experienced high blood pressure." However, neither party claims Cunningham had never experienced high blood pressure. Cunningham had neglected to have his blood pressure checked. The medical testimony indicated he was "undiagnosed hypertensive."
Howard involved a fireman who suffered a heart attack. The fireman suffered chest pains while doing maintenance labor at a fire station, and 11 days later had a heart attack that required hospitalization. The trial court awarded compensation to the fireman. The Court of Civil Appeals in Howard held that the trial court was to determine "if the job caused the injury or death." Howard, at 732, 318 So.2d 729. Howard set out a two-part causation test — legal and medical. The legal causation test: "If in the performance of the duties for which he is employed an employee is exposed to a danger or risk materially in excess of that to which people not so employedare exposed, and an injury occurs, such injury may legally be determined to have arisen from his employment. . . ." Howard, at 732, 318 So.2d 729. (Emphasis added.) The medical causation test: "that such exposure, though operating with or upon other exposure common to all, was in fact, the contributing cause of the injury." Howard, at 732, 318 So.2d 729. (Emphasis added.) In order for the employer to be liable, the employee must satisfy both tests.
The majority opinion describes the Howard test for legal causation as imposing on a worker seeking compensation the burden of showing "that the performance of his or her duties as an employee exposed him or her to a danger or risk materially in excess of that to which people are normally exposed in theireveryday lives." It added, "Clearly, a person shoveling coal isexposed to dangers materially in excess of the dangers to whichwe all face in merely living." 680 So.2d at 267. However,Howard's legal causation test requires that the risk be higher for the plaintiff than for someone not so employed, not higher than for someone "merely living." Compared to "merely living," being employed anywhere doing virtually anything would probably expose the employee to a higher risk. As Cunningham's expert witness, Dr. Kirschberg, testified at trial, "Any sort of physical or excessive mental activity can [raise blood pressure]." Dr. Kirschberg also stated: "[Y]ou can have elevated blood pressure causing or having some cause of influence on the possibility of stroke." Thus, *Page 273 
the Howard legal causation test is effectively eliminated when comparing an employee's risk at work to that of "merely living."
The majority opinion restates the medical causation test ofHoward. The Howard test is "that such exposure [to a workplace risk], though operating with or upon other exposure common to all, was in fact, the contributing cause of the injury."Howard, at 732, 318 So.2d 729. The majority today restates that test: "[that] the particular exposure was in fact [a] contributing cause of the [complained of] injury." 680 So.2d at 266-67. Thus, the majority today changes the medical causation test from a question of whether the "exposure" is "the cause" or "the contributing cause" to a question whether it is "a cause." The practical implications of this change are huge. Requiring the plaintiff to prove that the work was "the cause" or "the contributing cause" puts the burden on the plaintiff to offer substantial evidence to support a finding that the employment was the leading cause of the injury. The standard stated today — "a cause" — requires evidence only that the employment was one factor among several contributing factors. This change in the Howard legal and medical causation tests eliminates any differentiation between a person's lifestyle and his or her employment. In other words, a person with a family history of heart disease, who smokes two packs of cigarettes a day, and who never exercises could say, "I was at work" (that would prove an exposure above "merely living"); "I had a heart attack while at work." (Being "at work" would be easy to prove as a factor in a subsequent heart attack because the plaintiff almost certainly would have suffered more stress while at work.) The standard as stated in the majority opinion means that a person who, while at work, suffers from the ill effects of any disease or condition could demand workers' compensation from his or her employer. It makes the employer "the insurer" of the employee.
In 1992 the Legislature stated the standard of review for determining the amount of evidence required to support "pure findings of fact" in workers' compensation actions. §25-5-81(e)(2). The majority today quotes from Southern CottonOil Co. v. Wynn, 266 Ala. 327, 331, 96 So.2d 159, 162 (1957), and then states: "Wynn's reasoning is still valid." 680 So.2d at 271. In Wynn, this Court applied the "scintilla" standard of review for determining the evidence required to support findings of fact. The majority today applies the reasoning ofWynn in discussing the evidence required to find causation.
In addition, Cunningham's injury occurred on September 2, 1992; therefore, this case is governed by the Workers' Compensation Act, as amended by Ala. Acts 1992, Act No. 92537, which became effective May 19, 1992. Section 25-5-81(c) provides:
 "The decision of the court shall be based on a preponderance of the evidence as contained in the record of the hearing, except in cases involving injuries which have resulted from gradual deterioration or cumulative physical stress disorders, which shall be deemed compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the employee's employment."
(Emphasis added.) Section 25-5-81(c) defines "clear and convincing" proof:
 "[E]vidence that, when weighted against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
Arguably, the stroke that Cunningham suffered resulted from "gradual deterioration." The majority does not address the application of § 25-5-81(c) to this fact situation.
Section 25-5-81(e) provides:
 "(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
 "(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." *Page 274 
An appellate review of the standard of proof is de novo, under § 25-5-81(e). Therefore, the evidence requirement of §25-5-81(c) must be met in order to uphold the trial court's decision in favor of Cunningham. The majority holds that the trial court's decision is to be upheld if it is supported by "substantial evidence." However, "substantial evidence" is not the standard of proof set by the Legislature in § 25-5-81(c). "Substantial evidence" is the standard of review of the trial court's "pure findings of fact." The Legislature has provided that generally in workers' compensation cases the standard of proof is "preponderance of the evidence." In cases "involving injuries which have resulted from gradual deterioration or cumulative stress disorders," the standard of proof is "clear and convincing evidence." I am not convinced the trial court applied the correct standard of proof in this case.
Cunningham's injury is not a typical accident-related injury. As even Cunningham's expert testified: "[T]he most common causes [of a stroke] are atherosclerosis or so-called hardening of arteries and hypertension or high blood pressure, but other things also contribute greatly, either via those two or by themselves. For example, smoking is a major contributor." Cunningham was a heavy smoker, he was overweight, and he was an undiagnosed hypertensive. The gradual deterioration of Cunningham's health, based on these non-work-related factors is the better explanation for the cause of his stroke. Therefore, the standard used for injuries caused by "gradual deterioration" appears to be the more appropriate standard. "Clear and convincing" evidence means evidence that, when weighed against the evidence in opposition, produces "a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." Ala. Code 1975, § 25-5-81(c). In this case, the doctor that treated Cunningham stated that Cunningham's stroke was not related to his work. The only expert witness provided by Cunningham gave very weak testimony in support of Cunningham's claim. Dr. Nasrollah Eslami, Cunningham's treating physician, testified that he did not believe Cunningham's employment at Trinity contributed to his stroke. Dr. Eslami testified: "See, a stroke, it doesn't happen — it doesn't happen as a result of one factor in a short period of time. It is a disease process that goes on, like having, for example, [a] heart attack. You have a disease process that is slowly progressive in causing changes in the vessel walls[.]" Dr. Eslami further testified that he did not think that working with a punch press and lifting 15 pounds of metal, which was a routine that Cunningham was accustomed to, would have caused extremely high blood pressure: "I don't think that would have caused the extremely high blood pressure."
Dr. Gordon Kirschberg, the plaintiffs' expert witness on whose testimony the majority opinion relies, testified that the work might have been a factor. Dr. Kirschberg, in answer to the question whether physical activity, such as the work in this case, has a role in causing or initiating a stroke, stated: "That is something which nobody really knows. . . . [Y]ou can have elevated blood pressure causing or having some cause of influence on the possibility of stroke." Dr. Kirschberg testified: "[Y]ou give one last push to the blood pressure [and] it may cause some spasm or little clots to fall off and that may, in fact, be the cause of the stroke."
Not only is the "clear and convincing" standard of proof not met in this case, but the "preponderance of the evidence" standard is not met either. The treating doctor stated that the work had no relationship to the stroke, while Cunningham's expert witness gave weak testimony that barely supported Cunningham's claim.
It should be kept in mind that in nonaccident cases, expert testimony supporting a finding of causation is required. The plaintiff's expert said, "[N]obody really knows." In other words, his statements are only theory, not established medical facts. Further, the expert said "possibly" or "maybe" as to whether that theoretical view applied in Cunningham's case. Dr. Kirschberg testified: "Well, yeah, I want to be very clear about it so I'm not misquoted, but I don't think anybody has any proof that if you elevate your blood pressure there's a definite link between that and having a stroke. . . ." This evidence *Page 275 
is not "clear and convincing." Neither does it meet a "preponderance of the evidence" standard.
One can argue that because of the nature of strokes a worker will never be able to prove that his or her employment caused the stroke. This argument may be true, especially when considered in light of the testimony provided by medical experts in this case. However, workers' compensation claims are governed by statute. If the statute has set the standard of proof too high for nonaccidental injuries, then it is the duty of the Legislature to alter the statute. It could be that the Legislature considered the medical fact that non-accident-related injuries, e.g., strokes, are normally caused by many factors over the course of a person's life. Medical experts themselves have not come to a firm opinion as to the cause of strokes. They can happen anytime, anywhere. How can we hold an employer liable for a disease caused by such an indeterminate and questionable source? It is possible the Alabama Legislature had this medical fact in mind when it amended the Workers' Compensation Act in 1992?
The majority opinion effectively eliminates the two-part test of Howard. Also, it has, for all practical purposes, repealed the standard of proof requirements that the Legislature established under § 25-5-81. The potential for recovery on invalid workers' compensation claims, based on the holding of the majority opinion, is unlimited. Now, virtually anyone who has a heart attack, a stroke, or any other nonaccidental injury while at work can recover under the Workers' Compensation Act. I would reverse the judgment of the Court of Civil Appeals.